UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-929 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MAXAR TECHNOLOGIES INC., HOWELL | : **SECURITIES EXCHANGE ACT OF** |
| M. ESTES III, NICK S. CYPRUS, | : **1934** |
| ROXANNE J. DECYK, JOANNA O. ISHAM, | : |
| DANIEL L. JABLONSKY, C. ROBERT | : **JURY TRIAL DEMANDED** |
| KEHLER, GILMAN LOUIE, L. ROGER | : |
| MASON, JR., HEATHER A. WILSON, ERIC | : |
| J. ZAHLER, and EDDY ZERVIGON, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Maxar Technologies Inc. ("Maxar or the "Company") and the members Maxar's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Maxar by affiliates of Advent International Corporation ("Advent").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 31, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Galileo Bidco, Inc. ("Merger Sub"), a wholly-owned subsidiary of Galileo Parent, Inc. ("Parent"), will merge with and into Maxar with Maxar surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on December 15, 2022 (the "Merger Agreement"), each Maxar stockholder will receive $53.00 in cash for each Maxar share owned (the "Merger Consideration"). Merger Sub and Parent are each affiliated with Advent.

3. As discussed below, Defendants have asked Maxar's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Maxar's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Maxar stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Howell M. Estes III has served as a member of the Board since 2017 and is the Chairman of the Board.

11. Individual Defendant Nick S. Cyprus has served as a member of the Board since 2017.

12. Individual Defendant Roxanne J. Decyk has served as a member of the Board since 2019.

13. Individual Defendant Joanne O. Isham has served as a member of the Board since 2016.

14. Individual Defendant Daniel L. Jablonsky has served as a member of the Board since 2019 and is the Company's President and Chief Executive Officer.

15. Individual Defendant Gilman Louie has served as a member of the Board since 2020.

16. Individual Defendant L. Roger Mason, Jr. has served as a member of the Board since 2017.

17. Individual Heather A. Wilson has served as a member of the Board since 2021.

18. Individual Defendant Eric J. Zahler has served as a member of the Board since 2014.

19. Individual Defendant Eddy Zervigon has served as a member of the Board since 2019.

20. Defendant Maxar is a Delaware corporation and maintains its principal offices at 1300 West 120th Avenue, Westminster, Colorado 80234. The Company's stock trades on the New York Stock Exchange under the symbol "MAXR."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

23. Maxar provides earth intelligence and space infrastructure solutions in the United States, Asia, South America, Europe, the Middle East, Australia, Canada, and internationally. It operates through two segments, Earth Intelligence and Space Infrastructure. The Earth Intelligence segment offers earth imagery and other geospatial data sourced from its advanced satellite constellation and third-party providers to public sector and enterprise customers, as well as a provides advanced geospatial information, applications, and analytic services for national security

and commercial solutions. Its solutions include satellite access, geospatial foundation, precision mapping, on-demand intelligence, and geospatial services. It serves U.S. and international government agencies, and enterprise customer verticals. The Space Infrastructure segment provides space-based infrastructure, robotics, sub-systems, and information solutions, including communication and imaging satellites and payloads; platforms for space exploration and hosting instruments for earth science; space subsystems for power, propulsion, and communication; satellite ground systems and support services; space-based remote sensory solutions; space robotics; and defense systems. This segment serves government agencies and satellite operators. Maxar was founded in 1957 and is headquartered in Westminster, Colorado.

24. On December 16, 2022, the Company announced the Proposed Transaction:

> WESTMINSTER, Colo. & BOSTON--(BUSINESS WIRE)-- Maxar Technologies (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of comprehensive space solutions and secure, precise, geospatial intelligence, today announced that it has entered into a definitive merger agreement to be acquired by Advent International ("Advent"), one of the largest and most experienced global private equity investors, in an all-cash transaction that values Maxar at an enterprise value of approximately $6.4 billion. Advent is headquartered in the United States and has a demonstrable track record as a responsible owner of defense and security businesses. Following the close of the transaction, Maxar will remain a U.S.-controlled and operated company.
>
> Under the terms of the definitive merger agreement, Advent has agreed to acquire all outstanding shares of Maxar common stock for $53.00 per share in cash. The purchase price represents a premium of approximately 129% over Maxar's closing stock price of $23.10 on December 15, 2022, the last full trading day prior to this announcement, an approximately 135% premium to the 60-day volume-weighted average price prior to this announcement, and a premium of approximately 34% over Maxar's 52-week high.
>
> Following the closing of the transaction, Maxar will benefit from the significant resources, operational expertise and capacity for investment provided by Advent. As a private company, Maxar will be able to accelerate investments in next-generation satellite

technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions. This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping. With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial expertise supporting many satellite and defense platforms which serve the U.S. government and its allies as well as companies across the globe.

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors. "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar. "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives. As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent. "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery,

with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

**Transaction Details**

Under the terms of the agreement, which has been unanimously approved by Maxar's Board of Directors, Maxar stockholders will receive $53.00 in cash for each share of common stock they own.

Advent has arranged committed debt and equity financing commitments for the purpose of financing the transaction, providing a high level of closing certainty. Funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion, both on the terms and subject to the conditions set forth in the signed equity commitment letters.

The agreement includes a 60-day "go-shop" period expiring at 11:59 pm EST on February 14, 2023. During this period, the Maxar Board of Directors and its advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Maxar Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Maxar does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. The Company, Advent and BCI will contemporaneously pursue regulatory reviews and approvals required to conclude the transaction.

The transaction is expected to close mid-2023, subject to customary closing conditions, including approval by Maxar stockholders and receipt of regulatory approvals. The transaction is not subject to any conditionality related to the launch, deployment or performance of Maxar's WorldView Legion satellite program. Upon completion of the transaction, Maxar's common stock will no longer be publicly listed. It is expected that Maxar will continue to operate under the

same brand and maintain its current headquarters in Westminster, Colorado.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which Maxar will be filing on Form 8-K.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Maxar and Wachtell, Lipton, Rosen & Katz is serving as lead counsel to Maxar. Milbank LLP is serving as Maxar's legal advisor with respect to certain space industry and regulatory matters.

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Advent and Weil, Gotshal & Manges LLP is serving as lead counsel to Advent. Covington & Burling LLP is serving as Advent's legal advisor with respect to certain regulatory matters.

Skadden, Arps, Slate, Meagher & Flom LLP is serving as lead counsel to BCI. Freshfields Bruckhaus Deringer LLP is serving as BCI's legal advisor with respect to certain regulatory matters.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Maxar's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

26.     On January 31, 2023, Maxar filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Maxar management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts, which includes the July 2022 Base Case Forecast, the October Satellite Loss Case Forecast, the October 2022 Base Case Forecast, the November 2022 Base Case Forecast, and the November 2022 Satellite Loss Case Forecast (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Maxar management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered

Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to J.P. Morgan's *Selected Transactions Multiples Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis; and (ii) the inputs and assumptions underlying the FV/LTM Adj. EBITDA multiple reference range of 9.0x to 13.0x.

33. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each company selected by J.P. Morgan for the analysis; and (ii) the inputs and assumptions underlying the FV/2023E Adj. EBITDA multiple reference range of 7.7x to 10.9x applying Maxar's historical trading discount of 30% relative to the selected companies and a FV/2023E Adj. EBITDA multiple reference range of 11.0x to 15.5x without applying such trading discount; and (iii) the inputs and assumptions underlying the trading discount of 30%.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.0% to 3.0%; (iii) the inputs and assumptions underlying the use of the range discount rates of 9.0% to 11.0%; (iv) net debt of the Company as of December 31, 2022; (v) certain tax credits expected to be utilized by Maxar through fiscal year 2027 and beyond; (vi) the number of fully diluted shares of Maxar common stock outstanding.

35. With respect to J.P. Morgan's analysis of price targets, the Proxy Statement fails to disclose the equity research analysts reviewed and each analyst's price targets for shares of Maxar common stock prior to December 13, 2022.

11

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Maxar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Maxar, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Maxar, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 3, 2023       **MELWANI & CHAN LLP**

              By: */s/ Gloria Kui Melwani*
                 Gloria Kui Melwani (GM5661)
                 1180 Avenue of the Americas, 8th Fl.
                 New York, NY 10036
                 Telephone: (212) 382-4620
                 Email: gloria@melwanichan.com

                 *Attorneys for Plaintiff*